Mohottige Sisira **HENARATH**, Petitioner,

v.

John **ASHCROFT**, Attorney General, Respondent.

No. 01–71731.
INS No. A78–491–367.

United States Court of Appeals, Ninth Circuit.

Submitted March 7, 2003.*

Decided March 21, 2003.

Before REINHARDT, W. FLETCHER, and GOULD, Circuit Judges.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

MEMORANDUM **

Mohittige Sisira Neil Kamal Henarath, a Sinhalese citizen of Sri Lanka, petitions for review of an order of the Board of Immigration Appeals ("BIA") upholding an Immigration Judge's denial of his request for asylum and withholding of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252, and review under the substantial evidence standard the BIA's ruling that Henarath has not proven eligibility for asylum and its decision that Henarath is not entitled to withholding of removal. *Rios v. Ashcroft*, 287 F.3d 895, 898–99 (9th Cir.2002). The BIA's decision must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *See INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). We conclude that the record as a whole provides substantial evidence supporting the BIA's decision and deny the petition.

Henarath testified that he was a merchant seaman and that Tamil crewmen taunted him on a shipping vessel regarding their victories over the Sinhalese and their plans to "take off" the President. Henarath testified that, on one occasion, he lost his temper and struck a Tamil crewman named Thangiah, knocking out one of his teeth, after Thangiah danced around celebrating a Tamil attack on Sinhalese people in Sri Lanka in the presence of Henarath.

Henarath testified that after returning to Sri Lanka, following his altercation with Thangiah, he received threatening phone calls from Thangiah for over a year. Henarath spoke to the police who told him not to "worry too much about it" but to change his phone number. Henarath changed his phone number and moved into his brother's house. Henarath testified that, after changing his number, he received a final call from Thangiah who told Henarath that he was placed on a hit list for assaulting a member of the Liberation Tigers of Tamil Ealam ("LTTE") (presumably Thangiah). Although Henarath is not aware of any phone calls from Thangiah since May of 2001, Henarath testified that his wife is "permanently moving" because she is frightened by the threats from Thangiah, and that the new occupants of Henarath's prior residence have received phone calls late at night, which have gone unanswered.

On the other hand, Henarath admitted that his school-age daughter has attended the same school for the past two years, that his family remains in the same general area, and that his family has not been harmed in any manner since Thangiah began threatening him. Additionally, Henarath testified that Thangiah did not threaten Henarath until after their fight during which Henarath knocked out Thangiah's tooth. Before the fight, Thangiah taunted Henarath after LTTE killings in Sri Lanka, and told Henarath that the LTTE planned on assassinating the president and forming a separate country, but Thangiah had not yet threatened Henarath. The first death threat from Thangiah did not occur until several months later, after their fight and after Henarath and Thangiah left the ship.

■ In order to demonstrate past persecution based on threats, the threats must cause significant "actual suffering or harm." *Lim v. INS*, 224 F.3d 929, 936 (9th Cir.2000). Here, Henarath has failed

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

to introduce evidence of a direct, specific and menacing threat sufficient to constitute past persecution. Instead, Henarath has only shown that he has received a number of threatening phone calls from an individual with whom he previously fought. *See Zayas–Marini v. INS*, 785 F.2d 801, 806 (9th Cir.1986) (holding that death threats based on personal animosity did not constitute grounds for asylum). Henarath has not shown evidence that compels the conclusion that he suffered actual and specific past harms as a result of Thangiah's threats. We conclude that Henarath has not established past persecution based on a protected ground sufficient to establish eligibility for asylum.

◼ If an asylum applicant does not establish past persecution, he must demonstrate a well-founded fear of future persecution by establishing a genuine fear of persecution and by introducing credible, direct, and specific evidence supporting an objectively reasonable fear of persecution. *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir. 1996) (en banc). Henarath relies on the same evidence arising from Thangiah's telephone threats to support his argument that he has established an objectively reasonable fear of future persecution. We have held that a post-threat harmless period, while not conclusive, is relevant in the determination of an immigrant's asylum claim. *Lim*, 224 F.3d at 935. In *Lim* we held that petitioner, a policeman who investigated the military arm of a local communist party, showed specific, credible threats of harm (1) "when his colleagues who had received similar threats were murdered in 1990 and 1991, and [2] when he began being followed in May of 1991," despite the fact that the applicant in *Lim* first received threats in 1985. *Id.* Unlike the applicant in *Lim*, Henarath has not

provided sufficient evidence of an actual threat of harm to warrant reversing the decision of the Immigration Judge. Henarath resided in Sri Lanka for a period of over a year without being physically disturbed at his home and neither Henarath nor his family has received any additional telephone threats in the past two years. *Castillo v. INS*, 951 F.2d 1117, 1122 (9th Cir.1991) ("When determining the objective reasonableness of an alien's claim of well-founded fear of persecution the BIA may properly consider as significant a petitioner's continued safe and undisturbed residence in his homeland after the occurrence of the event which is alleged to have induced his fear.")

Finally, Henarath's allegations of alleged future persecution are further undermined because his family members have remained unharmed in Sri Lanka. *See Cuadras v. INS*, 910 F.2d 567, 571 (9th Cir.1990) ("[The applicant's] claims are further undercut by the fact that his father and brother have not been harmed, and they apparently reside unmolested in El Salvador."); *Estrada v. INS*, 775 F.2d 1018, 1021–22 (9th Cir.1985) ("The absence of harassment of an alien's family tends to reduce the probability of persecution."); *Lim*, 224 F.3d at 935 ("This court has allowed ongoing family safety to mitigate a well-founded fear, particularly where the family is similarly situated to the applicant and thus presumably subject to similar risk.") Although Henarath's family is not similarly situated to him, his family's continued safety over the past two years provides some evidence in support of the BIA's decision.

Because Henarath has not shown threats or specific evidence of harm to himself or his family sufficient to establish a reasonable fear of future persecution,

Henarath is not eligible for asylum. Asylum cases such as this are not easy, but we cannot say that there was not substantial evidence to support the BIA's decision.

Henarath's failure to meet the standard for asylum necessarily means that he cannot meet the more stringent standard for withholding of removal. *Pedro–Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir.2000). We deny Henarath's petition as to withholding of deportation.

**PETITION DENIED.**

REINHARDT, Circuit Judge, dissenting.

In my view, the record does not contain substantial evidence to support the BIA's denial of Henarath's request for asylum. Furthermore, even if the record could support a denial, it would be for reasons other than those offered by the BIA, and in that circumstance we may not affirm. The BIA's reasons are baseless, and we are not free to conjure up others. I therefore respectfully dissent.

Henarath testified that he received threatening phone calls, including death threats, for over a year, until he was finally able to change his phone number and move out of his home. He also testified that after changing his number he received another call in which he was told he had been placed on the hit list of a terrorist group, the Tamil Tigers. The BIA accepts all this as true and furthermore allows that the threats may have been connected to political views ascribed to Henarath. The BIA nonetheless concludes that Henarath's fear, while genuine, was not objectively reasonable.

Death threats constitute an objectively reasonable basis for a fear of persecution if the threats would "cause a reasonable person to fear." *Lim v. INS*, 224 F.3d 929, 934 (9th Cir.2000). It need not be probable that the death threats would actually be carried out, *id.*, because the issue is not whether the applicant would actually be murdered, or in any way harmed, if he returned to his home country. The issue is simply whether a reasonable person in his situation would be afraid.

Almost anyone who received death threats for over a year, and who was told by an avowed member of a powerful and violent organization that the organization intended to kill him, would be afraid. Such threats would "cause a reasonable person to fear" even if he tolerated a year of threats without being harmed, and even if his family was neither threatened nor harmed. Therefore, assuming–as the BIA does–the credibility of Henarath's testimony and the connection of the threat to Henarath's ascribed political beliefs, Henarath had an objective basis for the fear of persecution he unquestionably experienced, and the BIA's decision to the contrary was not based on substantial evidence.

There is a further, independent basis for vacating the judgment of the BIA: the BIA's reasons for denying the application are themselves unsupported. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943). In "affirming no less than reversing" the court must rely on the reasoning of the agency when reviewing matters that Congress placed within the agency's domain. *Id.* at 88, 63 S.Ct. 454.

The BIA offered five reasons for finding Henarath's fear unsupported. All five rea-

sons are themselves unsupported. First, Henarath did not testify that Thangiah "equated" him with the president of Sri Lanka when threatening that the Tamil Tigers would kill him as they had killed the president. Second, the frequency of conflicts on ships has no bearing on the credibility of the year-long, land-based threats against Henarath. Third, the fact that one friendly Tamil took Henarath on as a crew member in 2001 does not undercut the reasonableness of his fear that he will be killed by a particular group of active militant Tamils. Fourth, the conjecture that there may be ships without Tamils is simply not relevant. Fifth, the continued safety of Henarath's family members in Sri Lanka is not probative of Henarath's future safety there, because there is no evidence that his family members had engaged in political disputes or had been threatened by the terrorist organization. *See Lim*, 224 F.3d at 935.

The majority offers only two arguments for approving the BIA's finding that Henarath lacks an objectively reasonable fear: first, that Henarath lived in Sri Lanka for over a year without being "physically disturbed in his home," and second, that Henarath's family remained in Sri Lanka unharmed after Henarath's departure. However, we rejected both these arguments in *Lim* for reasons that apply also in the present case.

The petitioner in *Lim* endured not one, but six years of death threats before leaving his home country. *Lim*, 224 F.3d at 935. We held that, although relevant, the lengthy "post-threat harmless period" did "not render his fear unreasonable," because the threats were becoming more menacing at the time the petitioner fled. *Id.* In Henarath's case, he stayed a far shorter time; equally important, as in *Lim*, the final threat was the most menacing. In that final threat Henarath was told he was on a hit list. Thus the BIA erred in denying Henarath's application on the basis that he remained unharmed for a year after the threats began.

In *Lim* the petitioner's family had also remained behind unharmed. While the BIA found this fact significant, we held that "the fact that [his] family [was] safe [did] not refute his claims of persecution," *id.* (quoting *Ceballos–Castillo v. INS*, 904 F.2d 519, 521 (9th Cir.1990), because "no evidence ... suggest[ed] that Lim's family [was] similarly situated or subject to similar risk, and nothing in the record support[ed] an inference that their safety ensure[d] that Lim [would] be safe." *Lim*, 224 F.3d at 935. The situation is the same in the present case: The evidence in the record shows that the Tigers want to harm Henarath *in particular.* No evidence suggests that his family was at a similar risk. His family's safety, therefore, does not render Henarath's fear unreasonable.

Because the record compels the conclusion that Henarath had a subjective fear of persecution on account of political beliefs and that a reasonable person in Henarath's situation would have had an objective fear of such persecution, we are required to grant the petition and remand to the BIA for the exercise of the Attorney General's discretion as to asylum. Even if there were substantial evidence to support the denial, we would be required to vacate and remand for further proceedings because the BIA's reasons for denying the petition are both unsupported and unsupportable. I respectfully dissent.